```
                          UNITED STATES DISTRICT COURT
                          SOUTHERN DISTRICT OF FLORIDA

                          CASE NO. 08-Civ-22994-GOLD
                          MAGISTRATE JUDGE P.A. WHITE
RICKY KEMP,                      :

     Petitioner,                 :

v.                               :    REPORT OF
                                      MAGISTRATE JUDGE
WALTER McNEIL,                   :

     Respondent.                 :
_____
```

## I. Introduction

Ricky Kemp, who is presently confined at Okeechobee Correctional Institution in Okeechobee, Florida, has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, attacking his conviction and sentence in case number 04-11860, entered in the Eleventh Judicial Circuit Court for Miami-Dade County.

This cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. § 636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

The Court has before it the petition for writ of habeas corpus, the Respondent's response to an order to show cause and appendix of exhibits, and Kemp's reply.

## II. Procedural History

Kemp was charged with sexual battery with a weapon or serious injury and false imprisonment. [DE# 14, App. N at 13, 18]. The victim, who is homeless, testified she met Kemp at a gas station

where she panhandled. (T. 235). The two drank beer together two or three afternoons a week for about two months. (T. 235). The victim admitted she is bipolar, has post-traumatic stress disorder, panic disorder and anxiety for which she requires medication. (T. 233). When not taking medication she gets depressed but does not hallucinate or have trouble recognizing people. (T. 233-34). At the time of the offense she was not taking her medication. (T. 233).

The victim claimed she was resting on a bus bench during an early-morning walk to buy beer and cigarettes. Kemp offered her a ride; the victim denied she entered the car for prostitution. (T. 237). Instead of driving to the store, Kemp parked by a canal and asked for oral sex for $20. (T. 240-41, 250). The victim agreed. (T. 240, 250). Kemp did not like the oral sex so he demanded sex. (T. 241). The victim did not fight because she had been raped before. (T. 242). After several hours, the victim heard children nearby and started screaming. Kemp choked her until she was unconscious. (T. 243). She woke up in the back seat, hogtied. (T. 244). Kemp beat her, raped her and inserted an object into her anus and vagina until she lost consciousness. (T. 247). Kemp started driving and told the victim he was going to slit her throat. (T. 246-48). The victim, still tied up in the back seat, opened the car door with her feet. (T. 248). Kemp reached back and grabbed her by the hair but she rolled out of the car. (T. 248, 252). Another car stopped and a man jumped out with a gun. Kemp got into his car and drove away. (T. 248).

The other car was an unmarked police vehicle driven by undercover Detective Thomas. (T. 271). He had initially seen Kemp at the canal and thought he was fishing. (T. 272). He saw the same car speed down the road a few minutes later when a back door popped open and legs appeared. (T. 274-77). Thomas stopped and drew his

gun when the victim fell out. (T. 277-78). Thomas immediately radioed a BOLO (be on the lookout) report. (T. 279).

Detective Blackwood was nearby when he heard Thomas' BOLO. He spotted Kemp's car speeding away from Thomas' location within seconds. (T. 293-94). He stopped the car and detained Kemp. (T. 277-78, 283, 295). The back seat of Kemp's car was full of feces and a ball of blond human hair was in the front seat. (T. 334-35). Detective Thomas came to the scene and identified Kemp as the person he had seen earlier. (T. 283).

The victim, whose hands were still tied, was soaked in blood and feces. (T. 325). She required surgery and wore a colostomy bag for a year. (T. 249). The director of the Rape Treatment Center testified the injuries were consistent with forcible rape with an object. (T. 373, 391).

Kemp made voluntary statements which officers described at trial. (T. 331). In these statement, Kemp said the victim got into the car for prostitution and all the sex was consensual. (T. 339-40, 350). He denied using an object; he said he used his hand and forearm. (T. 344). He punched the victim for urinating in his car. (T. 339-40). She screamed so he continued to hit her to shut her up. He tied her hands and legs and told her he was going to kill her. (T. 340-41). He drove off to look for a secluded area to kill her when the victim jumped out of the car. (T. 342). This description of events is consistent with shorter spontaneous statements Kemp made at the scene and while being transported to the crime bureau. (T. 330, 360-61).

The defense cross-examined the victim about her mental issues, medications, alcohol use, intent to engage in prostitution with

3

Kemp and prior convictions. (T. 253-56). Defense counsel also elicited testimony that the victim made inconsistent statements during a hospital interview. She initially denied she knew Kemp and stated she voluntarily got into the back seat to have sex and did not run away because her purse was in the car. (T. 348).

The defendant did not testify but displayed his hands to the jury. (T. 396, 399). The defense did not present a case. In closing, defense counsel argued the victim was not candid with the jury and the two had simply engaged in consensual rough sex. (T. 401-03). Defense counsel argued the victim was not credible and misled the jury. Counsel argued the victim entered Kemp's car for prostitution, had not taken her medication in a month, was on heavy a drinking binge and might have been abusing drugs, that money found in her purse was Kemp's payment for prostitution, and that she lied about her prior convictions. (T. 401-03).

The jury was instructed on the charged offenses and several lessers including sexual battery, aggravated battery and battery. (DE# 14, App. N at 68]. In closing, the State explained sexual battery is "penetration, no consent, but ... the injury prong is gone." (T. 417). By contrast, simple battery is "bumping up against somebody against their will without their permission or slapping somebody on the arm." (T. 417-18).

The court instructed the jury it must follow the law spelled out in instructions and sent a copy of the instructions back with the jury during deliberations. (T. 438, 445-46). Those written instructions correctly set forth the elements of simple battery:

>    (a) RICKY KEMP intentionally touched or struck [the victim] against her will.

>    (b) RICKY KEMP intentionally caused bodily harm to [the victim].

[DE# 14, App. N at 81].

However, the transcript indicates the verbal instructions erroneously stated Kemp must have intentionally caused "great" bodily harm for a simple battery conviction. (T. 443).

The jury found Kemp guilty of the lesser offense of sexual battery and false imprisonment as charged. [DE# 14, App. N at 86-87]. The court adjudicated Kemp guilty and sentenced him as a habitual violent felony offender to thirty-five years with a ten-year minimum mandatory for the sexual battery and five years for false imprisonment, consecutive. [DE# 14, App. N at 88, 100].

On direct appeal, Kemp argued the trial court erred in excluding evidence the victim was previously convicted for prostitution in violation of his rights to confront his accuser and present a full and fair defense. [DE# 13, App. A]. The Third District per curiam affirmed on July 19, 2006. <u>Kemp v. State</u>, 933 So. 2d 1242 (Fla. 3d DCA 2006).

Kemp filed a petition for writ of habeas corpus in the Third District on November 1, 2006, in which he argued appellate counsel was ineffective for failing to argue: (1) the trial court erroneously instructed the jury it could convict Kemp for finding either sexual union or penetration where the information alleged only penetration; (2) the trial court erroneously instructed the jury on an impermissible lesser offense of sexual battery where the only permissible lesser offense was simple battery; and (3) Kemp was convicted of an offense not charged in the information. [DE#

13, App. F]. The Third District denied habeas on May 15, 2007, and denied rehearing on June 26, 2007. [DE# 13, App. I].

On February 5, 2008, Kemp filed a motion for post conviction relief in which he argued counsel was ineffective for failing to : (1) correct a misleading jury instruction regarding simple battery; (2) request a jury instruction on the necessarily included lesser of prostitution; and (3) introduce expert testimony and evidence on the victim's mental competency and credibility. [DE# 13, App. J]. He contends all three of these errors rendered his sexual battery conviction invalid. The trial court summarily denied the motion. [DE# 13, App. J]. The Third District per curiam affirmed. Kemp v. State, 990 So. 2d 1075 (Fla. 3d DCA 2008). The mandate issued on September 29, 2008. [DE# 13, App. M].

Kemp filed the instant habeas petition on October 20, 2008.[1] He raises the same jury instruction and evidentiary issues he presented in his State court motion for post conviction relief.

### III. Statute of Limitations and Exhaustion

The Respondent concedes this petition was timely filed and the claims are exhausted.

### IV. Standard of Review

Section 104(d) of AEDPA provides that a prisoner in state custody may not be granted a writ of habeas corpus for any claim that was adjudicated on the merits in state court unless the decision of the state court was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as

---

[1] The Eleventh Circuit recognizes the "mailbox" rule in connection with the filing of a prisoner's petition for writ of habeas corpus. Adams v. United States, 173 F.3d 1339 (11th Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

6

determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented" to the State court. 28 U.S.C. § 2254(d)(1), (2); see Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Fugate v. Head, 261 F.3d 1206, 1215-16 (11th Cir. 2001).

A state court decision is "contrary to" or an "unreasonable application of" the Supreme Court's clearly established precedent within the meaning of § 2254(d)(1) only if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. Brown v. Payton, 544 U.S. 133, 141 (2005); Williams, 529 U.S. at 405-06. In the habeas context, clearly established federal law refers to the holdings of the Supreme Court's decisions as of the time of the relevant state-court decision. Hall v. Head, 310 F.3d 683, 690 (11th Cir. 2002) (citing Williams, 529 U.S. at 412). However, in adjudicating a petitioner's claim, the state court does not need to cite Supreme Court decisions and the state court need not even be aware of the Supreme Court cases. See Early v. Packer, 537 U.S. 3, 8 (2002); Parker v. Sec'y, Dep't of Corr., 331 F.3d 764, 775-76 (11th Cir. 2003).

So long as neither the reasoning nor the result of the state court decision contradicts Supreme Court decisions, the state court's decision will not be disturbed. Id. Further, a federal court must presume the correctness of the state court's factual findings unless the petitioner overcomes them by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).

In the instant case, Kemp seeks habeas relief based on ineffective assistance of trial counsel. The United States Supreme Court clearly established the law governing ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984). Strickland requires a criminal defendant to show that: (1) counsel's performance was deficient and (2) the deficiency prejudiced him. Id. at 690. As to the first prong, deficient performance means performance outside the wide range of professionally competent assistance. Id. The judiciary's scrutiny of counsel's performance is highly deferential. Id. at 689.

As to the second prong, a defendant establishes prejudice by showing that, but for counsel's deficient performance, there is a reasonable probability the outcome of the proceedings would have been different. Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. Id. In the context of a guilty plea, Strickland's prejudice inquiry "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill v. Lockhart, 474 U.S. 52, 59 (1985). To establish prejudice after the petitioner has rejected a plea offer, the petitioner must "establish a reasonable probability that, absent counsel's ineffective assistance, he would have accepted the plea agreement." Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991).

A defendant must satisfy both the deficiency and prejudice prongs set forth in Strickland to obtain relief on an ineffective assistance of counsel claim. Failure to establish either prong is fatal and makes it unnecessary to consider the other. Strickland, 466 U.S. at 697.

Combining AEDPA's habeas standard and Strickland's two-pronged

test provides the relevant inquiry in this case. To obtain habeas relief, Kemp must show the state court "applied Strickland to the facts of his case in an objectively unreasonable manner" when it rejected his claims of ineffective assistance of counsel. Bell v. Cone, 535 U.S. 685, 699 (2002).

## V. Discussion

### Claim 1: Simple battery instruction

Kemp asserts the sexual battery conviction is invalid because the trial judge erroneously instructed the jury that simple battery requires a showing of great bodily harm. The jury found Kemp guilty of sexual battery -- the only charge for which it thought no finding of "great" bodily harm or "serious" personal injury was required. Kemp contends the jury would have convicted him of simple battery had the jury known it contained no "great" bodily harm element.

The fact that a jury instruction is allegedly incorrect under state law is not a basis for habeas relief. Estelle v. McGuire, 502 U.S. 62 (1991). The only question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Cupp v. Naughten, 414 U.S. 141 (1973). The applicable standard is whether there is a "reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the constitution. Boyde v. California, 494 U.S. 370 (1990); Estelle, 502 U.S. at 72 n.4 (clarifying that the Boyde reasonable likelihood standard applies). In making this determination on habeas review, the court does not judge portions of the jury charge, or even the entire charge, standing alone. Instead, a defendant's right to due process is only violated if the erroneous instruction, when viewed in light of the entire trial, was so misleading as to make the trial unfair.

Estelle, 502 U.S. at 72.

Kemp was charged with sexual battery with great force. The category 1 lesser included offenses for sexual battery with great force are sexual battery (§ 794.011(5), Fla. Stat.) and battery (§ 784.03, Fla. Stat.). Assuming the court's accidental addition of "great" bodily harm to the simple battery instruction violated Florida law, this error of State law provides no basis for habeas relief. Jury instructions for State offenses are within the purview of State courts. Agan v. Vaughn, 119 F.3d 1538 (11th Cir. 1997). By rejecting Kemp's post-conviction motion and appeal, the Florida courts have already decided the jury instructions adequately explained the law. Id.

Further, any error was harmless. Neder v. United States, 527 U.S. 1 (1999) (the omission of an element from a jury instruction is not a structural error and is therefore subject to harmless-error analysis). The correct written instruction for simple battery went to the jury room during deliberations and would have corrected any confusion the court's misstatement might have raised. Moreover, evidence beyond a reasonable doubt supported the jury's finding that Kemp committed the offense of sexual battery. See Fla. Std. Jury Instr. (Crim.) 11.4. Kemp had no constitutional right to a jury pardon which would have resulted in a misdemeanor conviction for simple battery. See United States v. Trujillo, 714 F.2d 102 (11th Cir. 1983). Any implication Kemp would have been convicted of simple battery rather than sexual battery had the court not misspoken while instructing the jury is "pure speculation...." which is insufficient to undermine this Court's confidence in the outcome of the proceedings. Perry v. Smith, 810 F.2d 1078, 1080 (11th Cir. 1987); see Magnotti v. Sec'y, Dep't of Corr., 222 Fed. Appx. 934 (11th Cir. 2007) (no reasonable probability the outcome

would have been different had counsel requested instruction on lesser offense because evidence was sufficient to sustain conviction for greater offense); Harris v. Crosby, 151 Fed. Appx. 736 (11th Cir. 2005) (no reasonable probability of different outcome if counsel requested instruction on lesser offense). Given the overwhelming evidence Kemp was guilty of sexual battery, "it is objectively reasonable to conclude any claimed instructional error ... did not have a substantial and injurious effect or influence on the jury's verdict." Lopez v. Crosby, 2006 WL 354428 (M.D. Fla. Feb. 15, 2006).

Claim 2: Consensual prostitution instruction

Kemp argues his sexual battery conviction is invalid because counsel should have requested an instruction on the lesser offense of "consensual prostitution."[2] He contends this offense was supported by the evidence and consent was his sole defense.

Counsel was not ineffective for failing to request an instruction on prostitution. Kemp was charged with sexual battery with great force. § 794.011(3), Fla. Stat. All the possible lesser included offenses are: sexual battery, battery, attempt, aggravated battery, aggravated assault and assault. § 11.2 Fla. Std. Jury Instr. (Crim.). Prostitution is not a lesser included offense of sexual battery with great force and Kemp was not charged with a prostitution offense. Therefore, counsel did not err by failing to request a jury instruction on prostitution because such request would have been meritless. See generally Chandler v. Moore, 240 F.3d 907, 917 (11th Cir. 2001) (counsel is not ineffective for failing to raise a non-meritorious objection).

---

[2] It is unclear which prostitution instruction Kemp contends counsel should have requested. See § 23.2 et seq., Fla. Std. Jury Instr. (Crim.).

11

The jury was instructed on sexual battery with great force and several appropriate lesser offenses. The offense for which Kemp was convicted, sexual battery, was supported by the evidence. There is no reasonable probability that the jury would have convicted Kemp of prostitution rather than sexual battery had it received such an instruction. See Magnotti, 222 Fed. Appx. at 934; Harris, 151 Fed. Appx. at 736.

Moreover, reasonable counsel could have concluded that requesting a prostitution jury instruction would have been counterproductive. The defense's theory was that Kemp engaged in consensual sex with the victim, a prostitute, and hit her when she urinated in his car. The jury would have acquitted Kemp of sexual battery had it believed the sex was consensual prostitution. That is, providing the jury with a prostitution instruction would have resulted in a prostitution conviction rather than an outright acquittal had the jury believed the defense's theory of the case. The State court's denial of relief was objectively reasonable.

Claim 3: Victim's mental state

Kemp argues defense counsel should have introduced evidence and expert testimony that the victim was a drug and alcohol addict, suffered from mental illnesses for which she was prescribed medications. According to Kemp, this evidence would have affected the outcome of trial because the sole defense was consent and evidence regarding the victim's mental state would have impeached her credibility.

The Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability or realistic chance for success. Knowles v. Mirzayance, __ U.S. __, 129 S.Ct. 1411, 1421-22 (March 24, 2009). "Complaints concerning uncalled

witnesses impose a heavy showing since the presentation of testimonial evidence is a matter of trial strategy and often allegations of what a witness would have testified to are largely speculative." United States v. Guerra, 628 F.2d 410, 413 (5th Cir. 1980); West v. Sec'y, Dep't of Corr., 151 Fed. Appx. 820 (11th Cir. 2005).

Kemp fails to explain what information an expert could have provided and how it would have been exculpatory. Defense counsel was aware of the victim's mental health situation and impeached her failure to take medication. Counsel also impeached her inconsistent statements and suggested she was a prostitute with a prior criminal record. The extent of appropriate investigation and impeachment was within counsel's discretion.

Moreover, "[a] petitioner cannot establish ineffective assistance by identifying additional evidence that could have been presented when that evidence is merely cumulative." Van Poyck v. Fla. Dep't of Corr., 290 F.3d 1318, 1324 n.7 (11th Cir. 2002); see Parker v. Allen, 565 F.3d 1258 (11th Cir. 2009) (same). The victim admitted she has several mental problems and was not taking medication at the time of the offense. She explained this made her depressed but did not affect her perception. Counsel is not ineffective for failing to present cumulative evidence.

Reasonable counsel could have concluded that further attacks on the victim's credibility and mental health status would have made her more sympathetic to the jury. See (T. 421) (defense counsel in closing argument stating "If I cross-examined [the victim] too hardly [sic], if I did something that upset you, please don't hold it against my client."); see Fotopoulos v. Sec'y, Dep't of Corr., 516 F.3d 1229 (11th Cir. 2008) (Florida Supreme Court

13

reasonably concluded counsel made a reasonable strategic decision in deciding not to impeach the state's theory of defense and concluding counsel's assistance was not deficient).

Under these circumstances, the State court's conclusion that Kemp failed to demonstrate ineffective assistance of counsel is not an unreasonable application of clearly established federal law.

Based upon the foregoing, it is recommended that this petition for writ of habeas corpus be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

SIGNED this 14th day of September, 2009.

UNITED STATES MAGISTRATE JUDGE

cc:  Ricky Kemp, pro se
     DC# 454420
     Okeechobee Correctional Institution
     3420 NE 168 Street
     Okeechobee, FL 34972-4824

     Rolando A. Soler, AAG
     Office of the Attorney General
     444 Brickell Ave., Suite 650
     Miami, FL 33131